**ODETICS, INC., Plaintiff,**

v.

**STORAGE TECHNOLOGY CORP., et al., Defendants.**

**No. Civ.A. 95–881–A.**

United States District Court, E.D. Virginia, Alexandria Division.

July 31, 1998.

Richard A. Simpson, Ross, Dixon & Masback, Washington, DC, Vincent J. Belusko, Graham & James LLP, Los Angeles, CA, for plaintiff.

Craig C. Reilly, Richards McGettigan Reilly & West, PC, Alexandria, VA, (Nanda K. Alapati, E. Bradley Gould, Pennie & Edmonds LLP, Washington, DC, Jon R. Stark, Mark R. Scadini, Pennie & Edmonds LLP, Pala Alto, CA, George C. Summerfield, Rader Fishman & Grauer, PLLC, Bloomfield Hills, MI, Herbert F. Schwartz, Mark H. Bloomberg, Fish & Neave, New York City, of counsel), for Storage Technology, defendant.

Craig C. Reilly, Richards McGettigan Reilly & West, PC, Alexandria, VA, (Ron E. Shulman, Nina F. Locker, Roger J. Chin, Wilson Sonsini Goodrich & Rosati, PC, Pala Alto, CA, of counsel), for Visa International, defendant.

Thomas J. Scott, Jr., Scott L. Robertson, Hunton & Williams, Washington, DC, for Crestar Bank, defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This patent infringement action is yet again before the Court following a jury verdict finding wilful literal infringement and awarding $70.6 million in damages.[1] Following the verdict, defendants filed a motion for judgment as a matter of law on the issue of infringement; this motion was denied. Since then, the Federal Circuit issued its decision in *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.,* 145 F.3d 1303

---

1. For other decisions chronicling this litigation, see *Odetics, Inc. v. Storage Technology Corp.,* 906 F.Supp. 324 (E.D.Va.1995) (discussing priority of invention in infringement suits); *Odetics, Inc. v. Storage Technology Corp.,* 919 F.Supp. 911 (E.D.Va.1996) (granting summary judgment motion on laches); *Odetics, Inc. v. Storage Tech. Corp.,* 116 F.3d 1497, 1997 WL 357598 (Fed.Cir. June 25, 1997) (reversing claim construction and remanding for retrial); *Odetics, Inc. v. Storage Technology Corp.,* 14 F.Supp.2d 785 (E.D.Va. 1998) (discussing effect of laches ruling on issuance of injunction); *Odetics, Inc. v. Storage Technology Corp.,* 14 F.Supp.2d 800 (E.D.Va.1998) (denying motion for enhanced damages and motion to reconsider laches ruling).

(Fed.Cir.1998), *reh'g en banc denied* (Fed. Cir. July 2, 1998), which counsels reconsideration of that ruling, and indeed mandates entry of judgment as a matter of law in favor of defendants.

## I

Plaintiff Odetics, Inc. is the owner of United States Letters Patent No. 4,779,151, issued on October 18, 1988. The '151 patent teaches a system for transporting cassette tapes from a storage library to a tape player. By way of example, the preferred embodiment contains an octagonal housing (often referred to as a silo) inside of which are seven columns of tapes and one column of tape drives, or tape players. Within this housing is a robotic arm that retrieves the tapes from their storage bins and places them into the tape drives. Claims 9 and 14 of the '151 patent, the claims-in-suit, describe a "rotary means" that (i) allows a cassette to be loaded from outside the library, for example by a human operator, and (ii) then rotates to allow the cassette to be accessed by the robotic manipulator located inside the silo. Specifically, the rotary means, as depicted in Figure 3 of the '151 patent, consists of a set of bins to hold the cassettes, a rod around which these bins pivot,[2] and a gear that enables the bins to rotate. These rotary means components make up the bin array.

Storage Technology Corp. ("STK") manufactures and sells certain library systems that Odetics alleged infringed the '151 patent. STK's systems are used to store and play computer data tapes. The accused STK systems contain "pass-thru ports," devices that connect multiple libraries or silos to each other so that tapes can be passed from one silo to another. In STK systems that include a pass-thru port, the tapes are placed in the pass-thru port in one library, and the pass-thru port then translates and rotates to deliver the tape to a second, adjacent library. The pass-thru port consists of several bins, a stem on which the bins are mounted, cam followers (or "pins"), a cam, a ball slide, and a lead screw. Odetics's expert, Dr. McCarthy, testified that the bins, the stem, and the cam followers in the pass-thru port comprised the "bin array" in that device.

Odetics filed this patent infringement action against STK and two STK customers who use systems equipped with the pass-thru ports, Visa International and Crestar Bank.[3] The crux of Odetics's infringement allegation was that the rotary means element of claims 9 and 14, both of which are § 112, ¶ 6 means-plus-function claims,[4] read on STK's pass-thru ports. Specifically, Odetics alleged that the bin array of the pass-thru port (as defined by its expert) performed an identical function and was structurally equivalent to the bin array of the rotary means. As to structural equivalence, Odetics's expert, Dr. McCarthy, testified that the bin array in the accused device—comprised of the bins, the stem, and the cam followers—was structurally equivalent to the bin array disclosed in the '151 patent—comprised of the bins, the rod, and the gear. Thus, the structural analysis reduced to a comparison between the gear of the rotary means and the cam followers in the pass-thru port.[5] The jury found

2. There are actually two rods in the rotary means, one extending from the top of the set of bins and one from the bottom. Together, they provide the single axis around which the bins rotate.

3. The case was tried twice. The first jury found that STK's accused devices did not infringe the '151 patent. Odetics appealed this finding, and the Federal Circuit vacated the jury's verdict on the ground that this Court's original claim construction was erroneous. *See Odetics,* 116 F.3d 1497, 1997 WL 357598. Thus, the matter was tried to a second jury using the claim construction mandated by the Federal Circuit.

4. "A means-plus-function limitation contemplated by 35 U.S.C. § 112, ¶ 6 (1994) recites a func-

tion to be performed rather than definite structure or materials for performing that function. Such a limitation must be construed 'to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.'" *Chiuminatta,* 145 F.3d 1303, 1307 (quoting § 112, ¶ 6).

Although Odetics accused the entire STK system, the sole infringement dispute, as the Federal Circuit recognized, was whether STK's pass-thru port was the same as or equivalent to the rotary means described in the patent. *See Odetics,* 116 F.3d 1497, 1997 WL 357598, at *6 (remanding for consideration of this question).

5. Odetics argues that such a comparison is improper, for it considers only part of the disclosed structure and part of the accused device, and not

that these components were indeed structurally equivalent. Accordingly, it concluded that STK, Visa, and Crestar literally infringed the patent, determined that a 4% running royalty rate was reasonable, and awarded Odetics $70.6 million in damages for STK's manufacture and sale of the infringing products since June 29, 1995. The jury awarded no damages for Visa's and Crestar's use of the infringing devices. Finally, it found that STK, but not Visa and Crestar, wilfully infringed the patent.

Following the jury's verdict, defendants[6] filed a motion for judgment as a matter of law ("JMOL") and an alternative motion for a new trial on the issue of infringement. *See* Rules 50 and 59, Fed.R.Civ.P. These motions were originally denied. *See* Order, *Odetics v. Storage Tech. Corp.*, No. 95–881 (E.D.Va. May 1, 1998). After denying the motions, the Court learned of the Federal Circuit's decision in *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303 (Fed.Cir.1998), *reh'g en banc denied* (Fed. Cir. July 2, 1998). Because it appeared that *Chiuminatta* shed additional light on, and potentially counseled a contrary result in the disposition of, the JMOL motion, the Court ordered the parties to file supplemental memoranda discussing the effect of *Chiuminatta* on the JMOL motion. *See* Order, *Odetics v. Storage Tech. Corp.*, No. 95–881 (E.D.Va. June 8, 1998). Because the parties have submitted these memoranda, and further because the issue has been argued orally, the matter is now ripe for disposition.

## II

At the threshold, Odetics asserts that the JMOL motion is procedurally barred for two reasons. First, it claims that although STK moved for JMOL at the close of Odetics's case, it did not renew that motion at the close of all the evidence. The general rule is that "if a motion for judgment as a matter of law was made at the end of one party's case but not renewed at the close of all evidence, the movant is precluded from renewing that motion after the verdict is rendered." 9 James Wm. Moore, *Moore's Federal Practice* § 50.05[1], at 50–21 (3rd ed.1997). There is an exception, however, to the usual rule: A party need not renew its JMOL motion at the close of all the evidence if the Court states that renewal is unnecessary. *See Singer v. Dungan*, 45 F.3d 823, 829 (4th Cir.1995). In this regard, the Court stated to STK's counsel in ruling on defendants' JMOL motion at the close of Odetics's case, "[Y]ou will have an opportunity to renew that motion *in the event of an adverse verdict,* and you'll have an opportunity to argue it orally and in writing as well *at that time.*" March 25, 1998, Tr. at 139 (emphases added). Thus, it was unnecessary for STK to renew its JMOL motion at the close of all the evidence. Any doubt on this question is laid to rest by the Court's further statement, when the JMOL was renewed after the jury returned its verdict, that "I will deem that you've made your motion in a timely fashion." March 27, 1998, Tr. at 143.

each structure in its entirety. To the contrary, the instant analysis compares the two structures in toto; such a comparison, however, reveals that the only relevant distinction is between is the gear in the claimed invention and the cam followers in the accused device.

To be sure, the infringement analysis must be conducted at the appropriate level of detail. Care must be taken not to analyze the various elements of the disclosed and accused structures at too minute a level. To do so would risk reading the term "equivalent" out of § 112, ¶ 6, for at too fine a level of detail, an accused structure would be either identical or noninfringing. On the other hand, if the analysis were conducted at too general a level of detail, almost all accused devices would be deemed equivalents. The proper level of detail for this analysis depends on the facts and circumstances of each case. In this case, the Federal Circuit has de-

fined the appropriate level of analysis for this case in construing the rotary means element of claims 9 and 14, to include the gear as an integral element of the disclosed . structure. *See Odetics*, 116 F.3d 1497, 1997 WL 357598, at *5. In so doing, the Federal Circuit indicated that any infringement analysis must take into account the gear and its putatively equivalent structures. And, Dr. McCarthy specifically identified the cam followers as the analogous element of the accused structure. From this it follows that the arguments at trial and on the instant JMOL motion properly focused on the equivalence vel non of the gear and the cam followers.

6. All defendants joined in the JMOL motion; however, STK took the lead in arguing the infringement question, as Visa and Crestar had agreed with Odetics that any finding of infringement or noninfringement with respect to STK would apply equally to Visa and Crestar.

Odetics next asserts that STK's original JMOL motion addressed only *functional* equivalence, and therefore that arguments here about *structural* equivalence are not proper. Again, this argument is unpersuasive. STK did move for JMOL of noninfringement as to structural equivalence in its supplemental JMOL motion, which the Court deemed timely. Moreover, even were this not the case, STK's initial motion regarding infringement in general was sufficient to preserve the specific structural equivalence argument that it later raised in its supplemental motion, and that it argues again here. *See Malta v. Schulmerich Carillons, Inc.,* 952 F.2d 1320, 1324–25 (Fed.Cir.1991). Finally, because there are no disputed facts, the structural equivalence can be decided by the Court as a matter of law. *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.,* 64 F.3d 1553, 1555 (Fed.Cir.1995).

## III

### A. *The Chiuminatta Decision*

*Chiuminatta* involved, *inter alia,* an apparatus patent for a rotary saw designed to cut concrete before the concrete hardens.[7] Claim 11 of the '499 patent generally describes a support surface that applies downward pressure at the point where the saw blade emerges from the concrete, thus preventing the blade from harming the concrete as it cuts. *See* 145 F.3d 1303, 1305. Specifically, the claim recites a "means connected to the saw for supporting the surface of the concrete adjacent to the leading edge of the cutting blade to inhibit chipping, spalling, or cracking of the concrete surface during cutting." *Id.* (quoting claim 11). Significantly, "the only structure disclosed [in the specification of the '499] for supporting the surface of the concrete is a skid plate." *Id.* Cardinal, the accused infringer, also sold a rotary saw that had a support structure to prevent chipping, spalling, and cracking. In the accused device, this support structure consisted not of a skid plate, but of "two small wheels mounted adjacent to the leading edge of the saw blade." *Id.* 145 F.3d at 1306. Chiuminat-

ta alleged that the wheels in the accused device were structurally equivalent to the skid plate in the claimed invention, and therefore that Cardinal infringed claim 11. Upon the parties' cross-motions for summary judgment, the district court ruled that Cardinal infringed the '499 patent. *See id.* 145 F.3d at 1305–06. On appeal, the Federal Circuit reversed this ruling and directed entry of judgment in favor of Cardinal. The Federal Circuit based this holding on its conclusion that the wheels and the skid plate were not, as a matter of law, structurally equivalent. *See id.* 145 F.3d at 1310.

When the Federal Circuit decided *Chiuminatta,* it did not state, either explicitly or implicitly, that its decision announced a significant change in the proper mode of infringement analysis under § 112, ¶ 6. Yet the analytical framework established and the conclusion reached in that case certainly suggest that the scope of a means-plus-function claim is such that unless the accused structure reads very closely on the disclosed structure, the two will not be deemed equivalent under § 112, ¶ 6. And when that occurs, of course, there can be no literal infringement under § 112, ¶ 6. *Chiuminatta* further teaches that in such a case, doctrine of equivalents infringement is also absent, unless the technology used in the accused structure was developed after the patent issued.

### 1. *Literal Infringement*

Because Chiuminatta's claim 11 was a means-plus-function claim, the question whether Cardinal literally infringed the '499 patent was analyzed under the familiar test of *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934 (Fed.Cir.1987) (en banc): "To determine whether a claim limitation is met literally, where expressed as a means for performing a stated function, the court must compare the accused structure *with the disclosed structure,* and must find equivalent *structure* as well as *identity* of claimed *function* for that structure." *See also Chiuminatta,* 145 F.3d 1303, 1307 (quoting *Pennwalt*). Cardinal conceded that the wheels of

---

**7.** Chiuminatta asserted infringement of both U.S.Patent B1 5,0556,499, the apparatus patent, and second, a method patent. Only the Federal

Circuit's discussion of the apparatus patent is relevant here.

its saw performed the same function as the skid plate in the preferred embodiment. The question presented on summary judgment and on appeal, then, was whether the skid plate and the wheels were structurally equivalent.

The Federal Circuit concluded that they were not. Chiuminatta had contended that because the wheels in Cardinal's saw compressed to form flattened planes on each side of the saw blade, they were equivalent to the structure of the skid plate, which also provided a flat plane on either side of the blade. This comparison, noted the Federal Circuit, improperly focused solely on the function of the two structures—using flattened planes to prevent damage to the concrete—and not on the structures themselves. *See Chiuminatta*, 145 F.3d 1303, 1309. According to the Federal Circuit, *Pennwalt*'s teaching requires a comparison of the disclosed *structure* (the skid plate) with the accused *structure* (the wheels).

In this regard, the '499 patent specification disclosed that the skid plate is "a generally rectangular strip of metal having rounded ends ... between which is a flat piece." *Id.* 145 F.3d at 1308 (quoting specification). Given this, the Federal Circuit held, as a matter of law, that the skid plate was substantially different from the wheels in Cardinal's accused rotary saw:

> The undisputed structure that produces the concededly identical function of supporting the concrete consists of soft round wheels that are rotatably mounted onto the saw. The assertedly equivalent structures are wheels, and the differences between the wheels and the skid plate are not insubstantial. The former support the surface of the concrete by rolling over the concrete while the latter skids. The former are soft, compressible, and round; the latter is hard and predominantly flat.... Additionally, the wheels rotate as opposed to skid as the saw moves across the concrete and thus have a different impact on the concrete. Since the wheels and the skid plate are substantially different from each other, they cannot be equivalent, and no reasonable jury could so find.

*Id.* 145 F.3d at 1309. Based on this analysis, the Federal Circuit found there was no literal infringement, and therefore reversed the district court's summary judgment ruling.

### 2. *Doctrine of Equivalents*

Chiuminatta argued that even if there were no literal infringement, the Federal Circuit should nonetheless have affirmed the district court's ruling of summary judgment of infringement based on the doctrine of equivalents. In response, the Federal Circuit explained that a means-plus-function analysis and a doctrine of equivalents analysis pose the same question, namely whether the disclosed and accused structures are "substantially" the same. *See id.* 145 F.3d at 1310 (stating that the two "tests for equivalence are closely related" (citing *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 1048, 137 L.Ed.2d 146 (1997))). The Federal Circuit thus declined to affirm the infringement finding under the doctrine of equivalents, holding that Chiuminatta's assertion that under the doctrine of equivalents "the wheels of the accused device differ from the patented invention only insubstantially [could] not succeed given our determination regarding literal infringement under § 112, ¶ 6." *Id.* at 1310. Accordingly, no literal infringement in that context also meant no doctrine of equivalents infringement.

Beyond this, the Federal Circuit went on to note that there remains one factor that distinguishes doctrine of equivalents infringement from literal infringement: The doctrine of equivalents prevents an infringer from avoiding a patent by using technology that was developed after the patent issued—technology, in other words, that could not have been disclosed in the patent—to create a product that, while not of equivalent structure for § 112, ¶ 6 purposes, "constitute[s] so insubstantial a change from what is claimed in the patent" that it should nonetheless be deemed an infringing product. *See Chiuminatta*, 145 F.3d 1303, 1310. In this limited circumstance, the law permits a finding of no equivalence, and thus no literal infringement, under § 112, ¶ 6, but a simultaneous finding of equivalence, and thus infringement, under the doctrine of equivalents.

Turning to the facts of the case before it, the Federal Circuit held that there could be no infringement under the doctrine of equivalents because the technology used in the accused device, a wheel, was invented before the '499 patent issued.[8] *See id.* 145 F.3d at 1311 (observing that the technology used in the accused device "could readily have been disclosed in the patent"). Therefore, the distinction between means-plus-function "equivalence" and doctrine of equivalents "equivalence" based on after-developed technology did not apply, and from this it followed that the finding of substantial differences that compelled summary judgment of no literal infringement also compelled summary judgment of no infringement under the doctrine of equivalents. *See id.* 145 F.3d at 1311.

## B. *Defendants' JMOL Motion*

Application of *Chiuminatta* to the instant facts, and consideration of the record as a whole, requires reconsideration of the earlier denial of defendants' JMOL motion, and further mandates entry of judgment as a matter of law of noninfringement, both literal and under the doctrine of equivalents. This conclusion is based on the rather simple notion that, just as the skid plate and wheels were substantially different structures in *Chiuminatta*, so too are the rotary means and pass-thru port substantially different here.

8. And, of course, there was no need to reinvent the wheel.

9. STK has previously argued that the two identified structures do not perform the same function. Simply put, the argument is as follows: The structure identified by Dr. McCarthy as infringing the '151 patent does not include those components, such as the cam, the ball slide, and the lead screw, that make the pass-thru port rotate, i.e., that make it perform the claimed function. And if one includes in the accused structure those components that make the pass-thru port rotate, so that one can assert identical function, there is no longer equivalent structure (as Dr. McCarthy admitted). So, the problem, according to STK, was that you had either equivalent structure but not identical function, or identical function but substantially different structure. The flaw in STK's argument is that the identical function, while performed by the accused structure, need not be actuated by that structure. In other words, the accused device can depend on

## 1. *Literal Infringement*

[6] As *Chiuminatta* and *Pennwalt* teach, it is not enough for infringement under § 112, ¶ 6 for the accused structure to perform the same function as the claimed invention.[9] Instead, a patentee must also show that the structure of the accused device that performs that function is the same as or equivalent to the structure disclosed in the patent's specifications. *See Pennwalt*, 833 F.2d at 934. Odetics did not (because it could not) claim that the accused structure was identical to the disclosed structure, for the embodiment shown in the specifications has a gear, whereas the pass-thru port does not. Instead, Odetics argued to the jury that the cam followers in the pass-thru port were *equivalent* to the disclosed gear. The jury accepted this argument and thus found that STK infringed the '151 patent.

Odetics's argument, however, suffers from the same flaw as did the patentee's argument in *Chiuminatta*. Dr. McCarthy testified, and Odetics argued to the jury, that the two structures were equivalent because they both caused the bin array to rotate from a position in which tapes could be loaded to a second position in which they could be grasped by the robotic manipulator. That is, Dr. McCarthy testified that because turning a gear and pushing on a cam follower yield the same result—rotation—the two structures were equivalent.[10] But as the Federal Cir-

components other than those that comprise the accused structure to perform the claimed function without foreclosing a finding of infringement. Indeed, the Federal Circuit adopted this same analysis in construing the claims-in-suit: that court identified the disclosed structure as Figure 3 minus the motor and one of the gears depicted in that figure, but then identified the claimed function as rotation, a movement that necessarily depends on the motor and gear for its actuation. Thus, the Federal Circuit recognized that the structure that performs the claimed function can be actuated by components that are not part of that structure. STK's argument in this regard, then, is unpersuasive.

10. *See* Mar. 24, 1998, Tr. at 103. Curiously, although Dr. McCarthy testified that the structures were equivalent, he responded in the negative to the question, "Do you have to find that those two [the gear and the cam followers] are equivalent before you could find literal infringement?" *Pennwalt*, of course, requires that such

**814**

cuit has explained, just because two structures perform the same function does not make them structurally equivalent under *Pennwalt* and § 112, ¶ 6. *See Chiuminatta,* 145 F.3d 1303, 1308. To prove equivalent structure, Odetics had to prove that the bin array of the rotary means was equivalent to the bin array of the pass-thru port as identified by Dr. McCarthy; and this meant, essentially, that Odetics had to prove that the gear in the rotary means was equivalent to the cam followers in the pass-thru port.[11]

Odetics's proof in this regard ultimately fails, for the cam followers and the gear differ structurally in two substantial ways, just as the wheels differed from the skid plate in *Chiuminatta.* First, the two structures are physically different. In the disclosed structure, the gear is a disc or cylinder with teeth that fit with the teeth of another gear, thus enabling the disclosed gear to move in conjunction with the bin array, whereas the cam followers are smooth pins attached to the array by a stem, and turn independently from the array. Similarly, in *Chiuminatta,* the components were physically different. The skid plate was hard, fixed, and rectangular, whereas the wheels were soft, mobile, and round. Second, the structures, because they are physically different, perform the claimed function differently. Here the gear turns the bins about a single rod, whereas the cam followers, in conjunction with the lead screw and the ball slide, turn the bins by following the

path of the cam. Similarly, in *Chiuminatta,* the components operated in different ways. The skid plate skidded, whereas the wheels rolled. Simply put, a gear is not a pin; they are not equivalent structures.

These comparisons demonstrate that, under the teaching of *Chiuminatta,* no reasonable jury could conclude that the bin structure of Figure 3 and the pass-thru port are structurally equivalent. Indeed, the Federal Circuit held in *Chiuminatta* that the two structures were not equivalent even though the wheels and the skid plate could be substituted for each other—that is, one could be removed from its original device and placed in the other device without changing the functioning of the saw blade. In this case, Dr. McCarthy admitted that the gear and cam followers *cannot* be substituted for each other. A fortiori, there can be no structural equivalence here. For all of these reasons, there can be no literal infringement under § 112, ¶ 6, and judgment as a matter of law of no literal infringement must be entered in favor of STK.[12]

### 2. *Doctrine of Equivalents*

 *Chiuminatta* holds that, in the general case, when there is no equivalence under § 112, ¶ 6, there is also no equivalence under the doctrine of equivalents. *See* 145 F.3d 1303, 1310. The only exception to this rule is for an accused device that uses technology that was developed after the patent issued.

---

equivalence be found before there is infringement.

11. Both structures also contained several bins and a rod or stem, which, of course, are structurally equivalent.

12. The fact that Dr. McCarthy, a qualified expert and one skilled in the art, testified that the structures were equivalent does not prevent entry of JMOL in favor of defendants. Although the question of structural equivalence is a factual one, there are cases in which a reasonable factfinder can reach only one conclusion with respect to infringement. And this is one of those cases. *See also Chiuminatta,* 145 F.3d 1303. Odetics asserts that this conclusion is "clearly improper," as it contradicts the jury's factual determination and thus constitutes a substitution of the Court's judgment for that of the jury. Odetics is correct that the Court is substituting its own judgment for the jury's, but such a decision is not improper—indeed it is required—

when a jury's conclusion is, as a matter of law, unreasonable. *See* Rule 50, Fed.R.Civ.P.

In this regard, it should be noted that the jury's conclusion is perhaps explained by the fact that it was not specifically instructed to compare the two bin array structures, component by component, as required by the Federal Circuit's claim construction. *See supra* note 5. Thus, the jury may erroneously have thought that it was sufficient to compare the two structures in gross, thereby leading to a conclusion contrary to law. Indeed, Odetics urges that the correct comparison is that depicted in a computer animation of the two structures, which amounts to little more than a comparison of two sets of shelves that hold the tapes. Such a comparison is inappropriate, as it trivializes the § 112, ¶ 6 equivalence requirement and runs counter to the Federal Circuit's claim construction, which carefully defines the structure not in gross as a set of shelves, but in terms of the structure's integral components.

Here, the technology used in the pass-thru port (especially the cams and cam followers) was developed well before the '151 patent issued,[13] and thus it "could readily have been disclosed in the patent." *Id.* 145 F.3d at 1311. Accordingly, the exception carved out in *Chiuminatta* for distinguishing means-plus-function equivalence from doctrine of equivalents equivalence does not apply. In the instant circumstances, then, the conclusion that there is no § 112, ¶ 6 equivalence compels the conclusion that there is no doctrine of equivalents equivalence. *See id.* ("[W]here the equivalence issue does not involve later-developed technologies, but rather involves technology that predates the invention itself . . . a finding of non-equivalence for § 112, ¶ 6, purposes should preclude a contrary finding under the doctrine of equivalents.").

Accordingly, judgment as a matter of law of noninfringement under the doctrine of equivalents must be entered in favor of defendants.[14]

**IV**

One final point merits mention. *Chiuminatta* makes clear that the existing record provides a sufficient basis on which to award defendants judgment as a matter of law. Yet, the record as it now exists is substantially the same as the record that was before the Federal Circuit when it heard Odetics's appeal. Thus, it would appear, at least at first blush, that the Federal Circuit could have directed entry of JMOL in defendants' favor at the same time it ruled that this Court's claim construction was erroneous. Instead, of course, the Federal Circuit remanded for a determination of whether the pass-thru port

and the rotary means were equivalent structures. Odetics argues that the remand on this factual issue suggests that judgment as a matter of law is inappropriate. This argument is not persuasive. The Federal Circuit's decision focused on claim construction and did not engage in any infringement analysis. Specifically, after reversing this Court's claim construction, the Federal Circuit stated:

> The claim construction here went to the core of the parties' dispute over infringement. We therefore remand for a consideration of whether STK's accused Pass–Thru Ports are the same as, or equivalent to, the structure shown in Fig. 3 and described in the specification.

*Odetics,* 116 F.3d 1497, 1997 WL 357598, at *6. Thus, the Federal Circuit recognized that the parties' infringement arguments then before it were inadequate, in light of the new claim construction, to provide a basis for a ruling on the ultimate infringement question. Accordingly, the Federal Circuit remanded the matter so that the parties could present their new infringement arguments, consistent with the new claim construction, to this Court on summary judgment or to the jury, as appropriate. For the Federal Circuit to have decided the infringement question as a matter of law in the procedural posture of the case on appeal would have required that court to disregard the fact that the parties had not yet had the opportunity to explore and dispute the infringement issues in light of the Federal Circuit's claim construction, and thus to argue issues that went to "the core of [their] dispute." *Id.* In sum, the fact that the Federal Circuit did not decide the

---

**13.** Odetics suggests that because the pass-thru ports did not become publicly available until the latter half of 1987, after the '151 patent was filed, the exception for after-developed technology should apply. This argument is patently unpersuasive, for two reasons. First, the exception applies to technology developed after the patent issues, not after it is filed. *See Chiuminatta,* 145 F.3d 1303, 1310. Second, and more important, the exception applies to the availability of the technology used in the accused device (here, cams and cam followers), not the accused device itself (here, the pass-thru port). Were this not so, then the exception would swallow the rule, as accused *devices* are often developed after issu-

ance of the patent, regardless of when the technology used in those devices may have been invented.

**14.** This result obtains notwithstanding the fact that the jury here never reached the doctrine of equivalents question, given that it had concluded that defendants literally infringed the patent. *See Chiuminatta,* 145 F.3d 1303, 1311 (directing district court to enter judgment on both literal infringement and doctrine of equivalents infringement, even though district court had never reached the doctrine of equivalents question, given that it had found literal infringement).

infringement issue on appeal does not foreclose this Court from deciding the issue at this point, now that the parties have had an adequate opportunity to argue the matter fully in light of the new claim construction.[15]

An appropriate Order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

---

**15.** In any event, the Federal Circuit's silence on the JMOL issue is simply insufficient to provide the basis for an inference that the structural equivalence argument cannot, on these facts, be decided as a matter of law.