**STAIRMASTER SPORTS/MEDICAL PRODUCTS, INC., a Delaware corporation, Plaintiff,**

v.

**GROUPE PROCYCLE, INC., a Canadian corporation, and Procycle U.S.A., Inc., a Delaware corporation, Defendants.**

**Civil Action No. 97–396 MMS.**

United States District Court,
D. Delaware.

July 29, 1998.

Opinion Denying Reargument
Sept. 3, 1998.

---

Donald F. Parsons, Karen L. Pascale, of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for plaintiff; Paul T. Meiklejohn, Ramsey M. Al–Salam, Brian G. Bodine, of Seed and Berry LLP, Seattle, WA, of counsel.

Allen M. Terrell, Jr., Jeffrey L. Moyer, of Richards, Layton & Finger, Wilmington, DE, for defendants; Bernard L. Sweeney, Robert Kenney, Edward H. Sikorski, Mary Ann Capria, of Birch, Stewart, Kolasch & Birch, LLP, Falls Church, VA, of counsel.

## OPINION

Murray M. SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

StairMaster Sports/Medical Products, Inc. ("StairMaster") filed a patent infringement action against Groupe Procycle, Inc. and Procycle U.S.A., Inc. (collectively "Procycle"), alleging infringement of their U.S. Patent No. Re. 34,959 entitled "Stair–Climbing Exercise Apparatus" ("the '959 Patent"). Specifically, StairMaster alleges that Procycle's Quantum and Executive Stair–Climbing devices infringe its '959 Patent. Procycle answered StairMaster's complaint by denying it had infringed the '959 Patent and by counterclaiming for a declaratory judgment that the '959 Patent is invalid, not infringed, and unenforceable.

In *StairMaster Sports/Medical Products, Inc. v. Group Procycle, Inc.*, 1998 WL 290296 (D.Del. May 20, 1998), the Court construed disputed claim language of the '959 Patent as the first part of its infringement analysis. Currently before the Court is StairMaster's Motion for partial summary judgment on infringement of Claim 9 of the '959 Patent under a theory of literal infringement and Procycle's Motion for summary judgment on noninfringement of Claims 1, 7, 9 and 11 of the '959 Patent and on invalidity of the '959 Patent based on violations of the patent reissue statute, 35 U.S.C. § 251. Jurisdiction is proper under § 1338(a). StairMaster's motion for partial summary judgment will be denied, while Procycle's motion for summary judgment will be granted in part and denied in part.

## II. FACTUAL BACKGROUND

### A. HISTORY BEHIND ISSUANCE OF '959 PATENT

Lanny L. Potts ("Potts"), the inventor of StairMaster's stair-climbing (also referred to as "stepper") technology, filed a patent application with the Patent and Trademark Office ("PTO") on August 4, 1986. Throughout the initial prosecution of this patent, Potts was represented by a patent attorney, William S. Dorman ("Dorman"). Potts filed a Petition

to Make Special to have his patent application granted "special status" and examined on an expedited basis under 37 C.F.R. § 1.102(d).[1] Under this special expedited procedure, the patent examiner's search is limited to the subject matter encompassed by the claims.

Dorman prepared the petition, verified its contents with Potts, and filed the Petition to Make Special. Although the PTO initially found the Petition to be insufficient, subsequently a renewed Petition was filed and the Petition was granted. After accepting the application under the specialized procedures, the patent examiner performed the limited prior art search. The claims as submitted were found to be allowable and United States Patent No. 4,708,338 ("the '338 Patent"), entitled "Stair Climbing Exercise Apparatus," issued to Tri–Tech, Inc. ("Tri–Tech"), to whom Potts had assigned the patent.

Subsequently, on September 25, 1989, Tri–Tech, through its attorney, Richard L. Hughes ("Hughes"), filed an application for reissue of the '338 Patent. As required by the applicable regulations, this application was accompanied by a Reissue Declaration signed by Potts, in which Potts identified certain features of the '338 Patent that were believed to contain either improper claim language or to lead to a too narrow scope of patent protection. In his Declaration, Potts stated these errors occurred because of his inexperience with patent matters and a misunderstanding by his attorney, Dorman. Potts also pointed out that a competitor had observed that the original claims were overly narrow in their scope. Based on the representations made by Potts, Hughes filed amended claims in an effort to correct the alleged errors.

On July 14, 1990, Potts passed away. Two months later, the PTO issued a first office action rejecting the application for reissue. In January of 1991, however, Tri–Tech filed a request for permission to waive the PTO rules and allow Edmund J. Farrell ("Farrell"), then president of Tri–Tech, to file a supplemental declaration to address the deficiencies in Pott's Reissue Declaration. This request was allowed by the PTO and amendments to the claims were filed. Over the course of the next year, Farrell submitted four Supplemental Declarations.

On August 14, 1992, Tri–Tech registered a name change with the PTO, from Tri–Tech, Inc., to StairMaster Sports/Medical Products, Inc. This name changed reflected the merger of Tri–Tech and StairMaster Southwest, Inc. Randall Peterson ("Peterson") became the president of the newly formed StairMaster company. Shortly thereafter, Peterson filed a first Supplemental Declaration on September 24, 1992, in which he identified additional errors in the pending reissue claims and filed an amendment. These newly added reissue claims received a final rejection from the PTO on January 21, 1993. A First Amendment After Final [Rejection] and Notice of Appeal from the Final Rejection to the Board of Patent Appeals and Interferences was filed by Hughes on StairMaster's behalf in April of 1993.

Thereafter, StairMaster retained a new attorney, George C. Rondeau, Jr. ("Rondeau"). Rondeau filed a Second, Third, Fourth and Fifth Amendment After Final [Rejection] and conducted interviews with the patent examiner. Additionally, Peterson filed a Second Supplemental Declaration on April 4,

---

1. 37 C.F.R. § 1.102 states:

(a) Applications will not be advanced out of turn for examination or for further action except as provided by this part, or upon order of the Commissioner to expedite the business of the Office, or upon filing of a request under paragraph (b) of this section or upon filing a petition under paragraphs (c) or (d) of this section with a showing which, in the opinion of the Commissioner, will justify so advancing it.

(b) Applications wherein the inventions are deemed of peculiar importance to some branch of the public service and the head of some department of the Government requests immediate action for that reason, may be advanced for examination.

(c) A petition to make an application special may be filed without a fee if the basis for the petition is the applicant's age or health or that the invention will materially enhance the quality of the environment or materially contribute to the development or conservation of energy resources.

(d) A petition to make an application special on grounds other than those referred to in paragraph (c) of this section must be accompanied by the petition fee set forth in § 1.17(i).

1994. Thereafter, a Notice of Allowability issued on August 16, 1994. Subsequently, the '959 Reissue Patent issued on May 30, 1995. The '959 Patent is identical to the superseded '338 Patent, except that five new claims have been added—Claims 7 through 11.

## B. THE '959 INVENTION

The '959 Patent describes an exercise device that simulates stair-climbing for a user. The StairMaster 4000PT is just one of many possible embodiments of the '959 invention; however, the Court provides the following brief description of its operation to provide context for the subsequent summary judgment discussion.

The 4000PT has two pedals for the user to stand on during exercise. These pedals swivel on the end of pedal arms that, in turn, pivot at a location at the bottom of the frame in front of the pedals. As a result, during use, each pedal travels down and to the rear. Because of a spring mechanism, when not in use, each pedal returns to an "up" position. When the user steps on a pedal, the pedal sinks under the weight of the user. By simulating a stair-climbing motion by alternatively stepping on the two pedals, the user keeps the pedals from fully sinking to the floor. The velocity of the pedals are controlled by the use of a control and braking mechanism and the stair-climber will operate whether the user takes relatively long steps or short steps. Because each pedal is independently linked to a drive shaft, when the user steps on the pedal, the pedal arm pulls on a chain that is attached at approximately the middle of the pedal arm. This same chain connects to a sprocket in the drive shaft which converts the oscillating motion of the independent pedals to unidirectional rotary motion by being connected to a drive shaft which has both a second sprocket attached to it, "the drive sprocket," and one-way clutches. Importantly, the patent requires that the angle between the pedal arm line and this chain must be less than 90 degrees when the pedals are in their upper most position.

After reaching the drive sprocket, the rotary motion is then transferred by means of another chain to a transmission which transmits and increases the rotational speed. In turn, the transmission is connected to a brake or alternator. The brake increases resistance when the user begins stepping too quickly. Thus, the brake makes the drive shaft more difficult to turn, thereby transmitting resistance to the pedal arms. The brake continues to impart resistance until the speed drops below a predetermined level. To increase velocity, the brake momentarily decreases resistance. These factors tend to create a narrow range of speed during use.

Since its introduction, the 4000PT stair-climbing or "stepper" device has achieved enormous commercial success, with revenues generated in excess of $219 million. Use of these type of stepper devices in the United States have increased dramatically and Stair-Master has entered into numerous licensing agreements and settlements with competitors based on this technology.

## C. THE ACCUSED DEVICES

Procycle manufactures and sells four models of stair-climbers: Quantum LS, Quantum LS2, Executive LS, and Executive LS2. These four stair-climbers are modified versions of the stair-climbers previously produced by a now-defunct Canadian corporation, Monark Bodyguard Fitness Corporation. Procycle has conceded, for purposes of this motion only, that all their stair-climbers may be considered to be substantially the same, except where otherwise noted.

The accused Procycle stair-climbers have two rotating axles. The first axle has rotary motion transmitted to it when the user presses the right or left pedal of the device downward in a reciprocating motion. A first cable attached to the pedal arm is also attached to a drive shaft, which has connected to it by a key and keyway a large drive pulley. Therefore, when the drive shaft begins to rotate, so does the large drive pulley connected to the drive shaft. However, because of one-way clutches located in the cam assembly associated with the drive shaft, the drive shaft only rotates when the pedals of the device are being pushed downward by the user, not thereafter when the pedals regain their upper-most position as a result of a spring

mechanism attached to the other end of the first cable.

A second cable wraps around this large drive pulley and also around a smaller pulley found on the hub of a flywheel, which is part of the second axis. Thus, the rotation of the larger drive pulley causes the smaller pulley on the hub of the flywheel to rotate, thereby causing the flywheel itself to rotate. The flywheel will rotate faster than the large drive pulley, because having a continuous cable attached to both a large pulley and a smaller pulley will act to impart increased rotational motion to the smaller pulley. Thereafter, the flywheel acts as a brake, imparting resistance to the motion of the large drive pulley by interacting with fields generated by electromagnets situated adjacent to the flywheel. Procycle alleges the upper angle formed by a straight line segment along the first cable, which attaches the pedal arm to the drive shaft, and a second line formed between the pedal arm pivot location and the location of the pedal attachment, is always greater than 90 degrees when the pedals are in their upper-most position.

### D. DISPUTES BETWEEN THE PARTIES

StairMaster in its motion for partial summary judgment argues that Claim 9 of the '959 Patent is literally infringed, as a matter of law, by Procycle's Quantum steppers.[2] Procycle, on the other hand, in its motion for summary judgment makes two arguments: 1) the accused stair-climbers do not infringe Claims 1, 7, 9 or 11 of the '959 Patent under either a theory of literal infringement or infringement by equivalency; and 2) Claims 7 through 11 in the '959 Patent are invalid for failure to follow properly the

reissue procedures outlined in the patent statute and its accompanying regulations.[3]

### III. DISCUSSION

### A. PROCEDURAL POSTURE

Summary judgment is appropriate in a patent case as in any other case, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See Lifescan, Inc. v. Home Diagnostics, Inc.*, 76 F.3d 358, 359 (Fed.Cir. 1996) (citing Fed.R.Civ.P. 56(c)); *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed.Cir. 1985). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *See Wright Medical Technology, Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1443 (Fed.Cir.1997). When considering a motion for summary judgment, the evidence must be viewed in a light most favorable to the party opposing the motion with doubts resolved in favor of the opponent. *See id.* If the moving party has made the required showing, the nonmoving party must then designate specific facts to demonstrate the existence of a genuine issue for trial. *See* Fed.R.Civ.P. 56(e). To create a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)).

---

**2.** Initially, StairMaster also asserted that Claim 11 of the '959 Patent was literally infringed, as a matter of law, by Procycle's Executive Steppers. However, because the Court has since denied StairMaster's motion for reargument on the *Markman* ruling, *see StairMaster Sports/Medical Products, Inc. v. Groupe Procycle, Inc.*, C.A. No. 97-396 MMS, 1998 WL 449682 (D.Del. July 14, 1998), StairMaster has withdrawn its summary judgment motion as to Claim 11 because it recognizes that factual issues remain concerning equivalents under either § 112, ¶ 6 and/or the

doctrine of equivalents. *See* Docket Item ("D.I.") 153 at 1 n.1.

**3.** At oral argument, Procycle withdrew its motion for summary judgment based on the theory that Claims 7 through 11 of the '959 Patent were invalid for failure to meet the written description requirement and the definiteness requirement under § 112, ¶ 1 and ¶ 2, respectively. *See* D.I. 151 at 5.

## B. INFRINGEMENT

■ Patent infringement occurs when a device, that is literally covered by the claims or is equivalent to the claimed subject matter, is made, used, or sold, without the authorization of the patent holder, during the term of the patent. *See Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1476 (Fed.Cir.1998). Infringement, whether literal or under the doctrine of equivalents, is a question of fact. Nonetheless, summary judgment is possible if no reasonable jury could find that the accused device literally infringes or infringes by equivalency the claims of a patented invention. *See Lifescan*, 76 F.3d at 359. However, because infringement is a fact issue, "a motion for summary judgment on infringement or noninfringement should be approached with a care proportioned to the likelihood of its being appropriate." *D.M.I.*, 755 F.2d at 1573.

■ In determining whether there has been an infringement, a two step analysis is followed. First, the claims must be construed to determine their scope. *See Kahn v. General Motors Corp.*, 135 F.3d 1472, 1476 (Fed.Cir.1998). Second, the construed claims, not the commercial embodiment of the patented invention, must be compared to the accused device. *See id; S.R.I. Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed.Cir.1985) ("Infringement, literal or by equivalence, is determined by comparing the accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit."). This procedure applies whether the issue is of literal infringement or infringement by equivalency. *See Lifescan*, 76 F.3d at 359. As the first step has already been accomplished in the Court's recently issued claim construction Opinion, *see StairMaster*, 1998 WL 290296, the second step will now be undertaken in conjunction with these motions for summary judgment.

The Court will first consider the parties' literal infringement contentions and then proceed to the doctrine of equivalents.

## 1. LITERAL INFRINGEMENT

■ To establish literal infringement, a plaintiff must demonstrate by a preponderance of the evidence that every limitation in the claim is literally met by the accused device. *See Kahn*, 135 F.3d at 1476. Nonetheless, the literal infringement rule is somewhat modified when dealing with means-plus-function terminology under 35 U.S.C. § 112, ¶ 6. In such cases, "a claim containing a functional limitation written in means-for form is literally infringed when the accused device performs the function stated in the claim, by means of structure, material, or acts described in the specification or equivalents thereof." *See Multiform Desiccants*, 133 F.3d at 1479. In turn, to determine structural equivalency under § 112, ¶ 6, the "sole question," which is a factual one, is "whether the single means in the accused device which performs the function stated in the claim is the same as or an equivalent of the corresponding structure described in the patentee's specification as performing that function." *See D.M.I.*, 755 F.2d at 1575.

The Court will commence its consideration of literal infringement with Claim 9 and then proceed to consider Claims 1, 7, and 11, as many claim terms in dispute are common to all three claims. However, only Claim 9 is the subject of both parties' summary judgment motions.

### a. Literal Infringement: Claim 9

■ In Claim 9 of the '959 Patent, both the "drive system assembly" and the "less than 90 degrees" claim language are in contention. However, before reaching the merits on this claim language, it is necessary to recite what occurred during the claim construction phase of this litigation as concerns the "less than 90 degrees" angle limitation of Claim 9.[4] Procycle contends StairMaster

---

4. Claim 9, in relevant part, reads:
 ... said right elongated flexible member being connected to said right arm at an attachment location located away from said right pivot location toward said right pedal, the angle between a right arm line extending from said right pivot location through said right pedal attachment location and a straight line segment of said right elongated flexible member extending from said right side one way clutch toward said right arm, measured on a side of said right elongated

agreed that there was no claim construction issue and thus, implicitly agreed to Procycle's definition of this angle limitation. StairMaster, on the other hand, asserts it did not concede how the angle should be measured.

In its claim construction Opinion, the Court stated: "StairMaster conceded there need not be claim construction on the previously-disputed phrase "less than 90 degrees" found in Claim 9 of the '959 Patent." *See StairMaster*, 1998 WL 290296 at *2 n. 4. The transcript of the hearing specifically quotes StairMaster's attorney as stating, "There's *no claim construction . . .* on the angle measurement." *See id.* (quoting D.I. 117 at 13) (emphasis added). To give this statement context, the Court provides the entire statement made by StairMaster's attorney during the *Markman* hearing concerning the "less than 90 degrees" claim language:

> MR. MEIKLEJOHN: . . . And a third point that we'd like to concede—it's not an error, but it's a point we want to concede. It's in defendant's reply brief. Point Roman numeral IX at Pages 12 through 15 of the defendant's [reply] brief. We concur in that point, point Roman numeral IX. It discusses this angle, this less than 90–degree angle, *and how it's measured. We agree with the defendant's position on that.*
>
> THE COURT: So that's not to be—there's no claim construction on that term, then?
>
> MR. MEIKLEJOHN: There's no claim construction on that term, your Honor, on the angle measurement . . . .

D.I. 117 at 13, lines 8–19 (emphasis added). Referring back to Procycle's reply brief on claim construction, point Roman numeral IX states: "For the 'Less Than 90 degrees' Limitation in Claim 9, StairMaster Argues One of the Lines Defining the Angle Is the Line of the Pedal Arm. That Interpretation, However, was Surrendered During Prosecution." *See* D.I. 93 at 12. In summing up its argu-

ment in this section of its reply brief, Procycle stated, "Claim 9 cannot be construed as requiring the angle to be based on the line of the pedal arm. Rather, it must be based on a line defined by the arm's pivot location and the location where the pedal is attached to the pedal arm." *See id.* at 15. StairMaster specifically conceded this point and explicitly stated that, "it agreed with defendant's position on that."

Despite the history concerning this claim language, StairMaster, both in its motion for partial summary judgment and in its opposition to Procycle's motion for summary judgment, seeks to construe the Claim 9 angle measurement all over again by arguing: 1) "the relevant angle for the patented stepper is the upper angle between the chain and the *pedal arm line*," *see* D.I. 111 at 12, 13 (emphasis added); D.I. 127 at 30, 31; 2) by contending the purpose of this claim language is to describe the "feel" of the stepper to the user (even though as Procycle points out this "feel" contention was rejected specifically by the patent examiner on reissue), *see* D.I. 111 at 11; and 3) by maintaining that they "should not be estopped from an angle slightly greater than 90 degrees because nothing in the prosecution history requires literally reading the claim language." *See* D.I. 127 at 35.

StairMaster's arguments are too late. StairMaster is judicially estopped from changing its position. The doctrine of judicial estoppel, also called the doctrine against the assertion of inconsistent positions, is a judge-made doctrine that, "seeks to prevent a litigant from asserting a position inconsistent with one that [he] has previously asserted in the same or in a previous proceeding." *See In re Chambers Development Co., Inc.*, 148 F.3d 214, 1998 WL 258387 at *14 (3d Cir. May 22, 1998).[5] It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent

---

flexible member away from said pivot location, being less than 90 degrees when said right pedal is in said upper position . . . . Col. 10, lines 39–50. Similar language exists concerning an angle formed by the left elongated flexible member. *See* Col. 10, line 59 through Col. 11, line 2.

5. Third Circuit law properly applies to procedural issues like judicial estoppel because the law of the regional circuit applies to procedural matters that are not unique to patent law. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed.Cir.), *cert. denied*, 512 U.S. 1273, 115 S.Ct. 18, 129 L.Ed.2d 917 (1994).

litigants from playing fast and loose with the courts. *See id.* (citing *Ryan Operations, G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir.1996)). Although the judicial estoppel doctrine does not require demonstration of detrimental reliance or prejudice, the doctrine only applies where inconsistent positions have been asserted in bad faith. *See Krouse v. American Steriliz-er Co.*, 126 F.3d 494, 501 (3d Cir.1997); *Ma-lascalza v. National Railroad Passenger Corp.*, 1996 WL 159650 at *3 (D.Del. March 12, 1996) ("[J]udicial estoppel examines the 'relationship between the litigant and the judicial system, and seeks to preserve the integrity of the system.' ").

The claim construction phase of this litigation has ended with StairMaster conceding and accepting Procycle's definition of this claim angle, including how it is measured. It now wants to adopt a diametrically opposed position on the same claim language. StairMaster will not be permitted to play fast and loose with the Court. Given its concession during the Markman hearing, StairMaster's assertion of a new position must be regarded as being made in bad faith. Therefore, the "less than 90 degree" angle measurement in Claim 9 of the '959 Patent refers to the fact that the upper angle between the straight line segment of a elongated flexible member line and a line defined by the pedal arm's pivot location and the location where the pedal is attached to the pedal arm must be less than 90 degrees when the pedals are in their upper-most position.[6]

The Court now turns back to the literal infringement analysis. The Court finds the "drive system assembly" of claim 9 is not literally infringed. The Court construed the "drive system assembly" of claim 9 to refer to a device which sums reciprocating motion of the pedals into continuous and fluid rotary motion by means of a summing rotary member (defined as equivalent to drive sprocket 108 welded to drive shaft 106 or its structural equivalents), with a right or left one way clutch mounted thereon and

coupled through said right or left one way clutch to a right or left elongated flexible member. StairMaster contends the Quantum stepper has a similar system for converting the reciprocating motion of the pedals to rotary motion. Although the Quantum system converts reciprocating motion into rotary motion, it is does not do so with a drive sprocket welded to a drive shaft. Instead, the Quantum stepper uses a pulley connected by a key and keyway to a drive shaft. Thus, there remains a genuine issue of material fact whether these two structures are structurally equivalent under § 112, ¶ 6 and therefore, whether the "drive system assembly" of Claim 9 is met.

Additionally, the parties dispute the manner in which the elongated flexible member must extend from the cam assembly within the accused Quantum steppers. Procycle asserts that the claim language requires that the elongated flexible member must attach through the clutch and because in the Quantum steppers the elongated flexible member touches the cam but does not touch the clutch, this claim language is not met. StairMaster contends, however, that there exists the same kind of relationship between the flexible elongated member and the clutch in that the elongated flexible member in the StairMaster invention never touches the clutch either, only the drive sprocket on which the clutch is mounted. After consulting the claim language, the Court agrees with StairMaster that nothing in the claim requires the elongated flexible member to touch the clutch; the elongated flexible member must only "extend from" the one way clutch. *See* Col. 10, lines 44–47. Thus, this claim language is met by the accused Quantum device in that the flexible elongated member in the Quantum steppers do extend from the clutch, even though the member never touches the clutch.

However, both the genuine issue of material fact about the "drive system assembly" and the "elongated flexible member's" rela-

6. Although this construction was not in the Court's May 20, 1998 Claim Construction Order, *see* D.I. 140, this definition was agreed to by StairMaster when it conceded there was no claim construction issues concerning this claim language. *See* D.I. 93 at 15. The Court after reviewing the matter has found nothing which would indicate the adopted construction to be erroneous.

tionship in regard to the "one way clutch" prove inconsequential. Turning to the "less than 90 degrees" claim language in Claim 9, both sides agree the line on the Quantum steppers that corresponds to the "straight line segment of an elongated flexible member" is the straight line segment represented by the cable which spans between a respective pedal arm and its associated cam assembly, which is found within the drive shaft. The second line, according to the definition above, must now be defined in the patent as being a straight line between the pedal arm's pivot location and the location where the pedal is attached to the pedal arm. Although the arm's pivot location on the Quantum steppers is readily conceded by the two parties, the attachment location of the pedal to the pedal arm on the Quantum steppers is in dispute.[7] StairMaster argues that the pedal attachment location is located at a weld between the pedal arm and a piece of metal which StairMaster believes is the pedal. StairMaster labels the black treaded plastic material on top of the putative pedal "the pedal pad." Procycle, on the other hand, contends the pedal attachment location is not at this weld, but where two bolts connect the black treaded plastic pedal pad to a metal segment which they consider to be part of the pedal arm. The crux of the controversy between the parties is thus whether the metal segment welded to the pedal arm is part of the pedal arm or is the pedal.

The Court is persuaded that the metal segment after the weld is part of the pedal arm and not the pedal. If the pedal pad were unbolted, there would remain only a single metal bar which could no longer allow the pedal function to be performed. The Court finds therefore that this single metal segment without the pedal pad is more properly part of the pedal arm, not the pedal. This conclusion is supported by previous claim construction charts submitted by Stair-

Master itself in this litigation. In its claim construction chart for the Quantum steppers, sent to Procycle on November 26, 1997, StairMaster identifies the "right pedal" as "20" and the left pedal as "22" and identifies the pedal attachment points as "84" and "86," respectively. *See* D.I. 88, Ex.5, at 6. Throughout the illustrations accompanying this claim construction chart, though disputed by StairMaster, the Court finds that points "20" and "22" refer to the black treaded plastic parts of the Quantum stepper, not the supporting metal segment underneath, *see id.* at 10, 13–14, and that the points labeled "84" and "86," on the other hand, clearly points to the location where the bolt attaches the pedal to the pedal arm, not to the weld between the different segments of the pedal arm. *See id.* at 13–14. These claim charts are further proof that the pedal is only properly the black treaded plastic pad and the pedal attachment location refers to the bolts under that black treaded plastic pad. Accordingly, given the manner in which the Quantum steppers function and given the claim charts and diagrams all prepared by StairMaster, the Court holds that no reasonable jury would disagree that the pedal attachment location on the Quantum steppers is where the bolts attach the pedal pad to the pedal arm and that the pedal properly consists of only a black treaded plastic pad where the user actually steps.

Complicating the matter further, however, the '959 Patent invention employs one bolt, while Procycle's Quantum stepper uses two bolts. Construing this term most favorably to StairMaster by using the bolt which produces the smallest angle, both parties agree that this relevant angle never goes below 90 degrees.[8] Accordingly, the Court finds that there can be no genuine issue of material fact that the accused Quantum steppers do not literally infringe the "less than 90 degrees"

7. Unlike StairMaster's other arguments that went to how the claim language in Claim 9 should be construed, this dispute relates to how the construed meaning should be applied to the accused devices. Because the accused device is not properly before the Court in a claim construction hearing, *see Young Dental Mfg. Co., Inc. v. Q3 Special Products, Inc.*, 112 F.3d 1137, 1141

(Fed.Cir.1997), StairMaster is not judicially estopped from raising this argument at this time.

8. Procycle puts the minimal angle at 92.80, *see* D.I. 105 at 26, while StairMaster puts the angle between 91 and 95 degrees. *See* D.I. 127 at 33–34.

angle limitation.[9] Because Procycle has shown the "less than 90 degrees" claim language is not literally met, and as a result not every limitation in Claim 9 is met by the accused Quantum steppers, the Court grants Procycle's summary judgment motion as to noninfringement of Claim 9 under a theory of literal infringement by Procycle's Quantum steppers and denies StairMaster's partial summary judgment motion on infringement of Claim 9.

### b. Literal Infringement: Claims 1, 7 and 11

The next query is whether Procycle's Executive steppers literally infringe Claims 7 or 11 of the '959 Patent or whether any of Procycle's steppers literally infringe Claim 1 of the '959 Patent. The following claim terms are at issue in these claims: "drive system assembly (means)," "speed increasing transmission (means)," "drive means," "drivingly engages," "means for engaging," "engaged with," and "made to engage." All of these claim terms have been construed by the Court during the claim construction phase of this litigation. However, because the Court finds that the accused steppers do not literally meet the "engaged with," "means for engaging," or "engaging" claim language of claims 1, 7 or 11, the Court need only limit its literal infringement summary judgment analysis to these claim terms. *See Kahn*, 135 F.3d at 1477 ("The absence of even a single limitation of [a claim] from the accused device precludes a finding of literal infringement.").

▬ The Court begins with an analysis of Claim 11 and the accused Executive steppers. Specifically, the claim language of section (f) is first considered. The patent reads: "a brake dissipating the work of the user in the form of heat, said brake being engaged with the transmission output." *See* Col. 12, lines 4–6. There is no dispute between the parties that the accused Executive steppers have a brake, i.e., the flywheel, and that the flywheel dissipates the work of the user in the form of heat. The crux of the controversy is whether the flywheel is "engaged with" the output of the speed increasing transmission. The Court has construed "engaged with" in Claim 11 to refer to "any type of mechanical engagement capable of coming into contact, interlocking, or meshing ... a transmission output and a brake." StairMaster contends that the speed increasing transmission is the large drive pulley connected by a cable to the small pulley found on the hub of the flywheel, and therefore, the transmission output is the hub on the flywheel. StairMaster then argues that the hub on the flywheel is "engaged with" the brake, which is also the flywheel, through molecular interactions. Procycle, agreeing for the sake of argument that the small pulley on the flywheel constitutes the transmission input of the speed increasing transmission, asserts that the flywheel and the hub on the flywheel are one piece of metal and that they cannot be engaged within the meaning of the claim language.

The Court agrees with Procycle. After closely examining the accused Executive steppers,[10] it is clear that the flywheel and its hub are one integral piece of metal. There is no "mechanical connection" between the flywheel and its hub in the sense of a sprocket and a chain, a cable or pulley, or a series of gears. Nor is there properly a direct mechanical connection in the sense of a key and a key way or a weld between two separate mechanical components. The intra-molecular connections urged by StairMaster between the hub and the flywheel are more properly considered "chemical bondings," rather than "mechanical engagements." Additionally, if the Court were to adopt StairMaster's broad view of this claim language,

---

9. StairMaster also attempts to argue that prosecution history estoppel does not necessarily limit it to the literal language of the claim element, even when the amendment in question was made to overcome prior art. Although that may be so, such an argument is more properly addressed in the doctrine of equivalents section. Because StairMaster only moved for partial summary judgment under a theory of literal infringement, this argument will be considered when analyzing Procycle's summary judgment motion for noninfringement of Claim 9.

10. The parties brought into the courtroom all relevant steppers and removed the housing, thus allowing the Court to view pertinent areas in contention, and thereby contributing immensely to the Court's understanding of the technology.

any single component could be considered to be made up of a multitude of "engaged" parts. Further, there is an insinuation of two separate components coming together in the language, such that these parts are "capable of coming into contact, interlocking, or meshing . . . ." A flywheel and its hub, made from the same piece of metal, do not meet this requirement. Consequently, the Court finds the Executive Steppers do not run afoul of the claim language of Claim 11, section (f). Because every limitation in the claim must be literally met by the accused device, *see Kahn*, 135 F.3d at 1477 ("The absence of even a single limitation of [a claim] from the accused device precludes a finding of literal infringement."), the conclusion must be that Procycle's Executive Steppers do not literally infringe Claim 11 of the '959 Patent. Thus, Procycle's motion for summary judgment on noninfringement of Claim 11 under a theory of literal infringement is granted.

▮ In a similar manner, in Claim 7, section (h), the patent reads: "means for engaging said transmission output and said dynamic brake means." *See* Col. 9, lines 45–46. StairMaster again contends that the dynamic brake means is the flywheel and the transmission output is its hub. "Means for engaging" has been construed as a means-plus-function clause, having a function of engaging the "transmission output" with the "dynamic brake means" by use of "continuous belt 148" or structural equivalents thereto. Although determinations of structural equivalence are normally for the factfinder, § 112, ¶ 6 requires the function component to be identical, not equivalent. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1998 WL 239335 at \*7 (Fed.Cir. May 14, 1998). The Court therefore holds that as a matter of law, a single piece of metal does not in anyway perform the function of "engaging," in the manner that a continuous belt does. Molecular interactions within a single piece of metal cannot be properly considered as "engaging" two separate elements in a mechanical fashion. As such, every limitation in Claim 7 is not met. It follows that summary judgment must be granted to Procycle on noninfringement of Claim 7 by its Executive steppers under a theory of literal infringement.

▮ Lastly, Claim 1, section (i), of the patent reads: "a continuous belt engaging said transmission output and said dynamic brake means." *See* Col. 8, lines 21–22. As no reasonable jury could disagree that neither the Executive nor Quantum steppers have a continuous belt connecting the flywheel to its hub, this claim language is also not met under a theory of literal infringement. Summary judgment will therefore also be granted to Procycle on noninfringement on Claim 1 under a theory of literal infringement.

In sum, the Court finds that none of Procycle's accused devices infringe Claims 1, 7, 9 or 11 of the '959 Patent under a theory of literal infringement and therefore, summary judgment for Procycle is appropriate as to all these claims under a literal infringement theory.

## 2. THE DOCTRINE OF EQUIVALENTS

▮ Procycle also seeks a declaration that its Quantum and Executive steppers do not infringe Claim 1, the Executive steppers do not infringe Claims 7 and 11, and the Quantum steppers do not infringe Claim 9 under the doctrine of equivalents. Under this doctrine, an accused device "that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *See Kahn*, 135 F.3d at 1478 (citing *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 1045, 137 L.Ed.2d 146 (1997)). The doctrine of equivalents is applied to each individual element of a claim, not to the invention as a whole. *See Warner–Jenkinson*, 117 S.Ct. at 1049. Normally, it is for the trier of fact to apply the claim as construed to determine whether the accused device, element by element, is equivalent to that which has been patented. *See Multiform Desiccants*, 133 F.3d at 1480. As previously stated, however, summary judgment is possible if no reasonable jury could find that the accused device infringes by equivalency the claims of a pat-

ented invention. *See Lifescan*, 76 F.3d at 359.

"Equivalence," in this context, has been determined by either focusing on whether the accused device performs substantially the same function in the same way to achieve substantially the same result (the so-called "function/way/result" test), *see Kahn*, 135 F.3d at 1478, or by considering whether there are "insubstantial differences" between the patent claim term and the accused device. *See Warner–Jenkinson*, 117 S.Ct. at 1054. The Supreme Court observed that a court may apply either test in making a determination under the doctrine of equivalents, as long as the following essential inquiry is made: Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention? *See id.* The Court will apply the "function/way/result" equivalency test as the Supreme Court has intimated that this test is more apt when dealing with mechanical devices. *See Warner–Jenkinson*, 117 S.Ct. at 1054. ("There seems to be substantial agreement that ... the [function/way/result test is] suitable for analyzing mechanical devices ....").

■ "Interchangeableness" between elements in the accused device and claimed elements in the patented invention also remains a "significant factor" in determining equivalency. *See Multiform Desiccants*, 133 F.3d at 1480. Interchangeableness need not be known at the time the patent application was filed, and substitution of a later developed element does not insulate the combination from a finding of equivalency. *See id.* (citing *Warner–Jenkinson*, 117 S.Ct. at 1052–53). Lastly, the Supreme Court warned against a range of equivalents with "such broad play as to effectively eliminate that element in its entirety." *See Warner–Jenkinson*, 117 S.Ct. at 1049.

■ Prosecution history estoppel also provides a legal limitation on the application of the doctrine of equivalents. *See Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1455 (Fed.Cir.1998) (*in banc*). Prosecution history estoppel is a question of law. *See id.* Under this analysis, the Court must determine whether there is any estoppel de-

rived from the prosecution history that bars a remedy even when there is a technological equivalence. *See Multiform Desiccants*, 133 F.3d at 1480. This estoppel "may arise either from matters surrendered as a result of amendments to overcome patentability rejections ... or as a result of argument to secure allowance of a claim." *See Cybor*, 138 F.3d at 1460. However, the reason for offering an amendment or an argument remains relevant to the application of an estoppel. *See Litton Systems, Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1456 (Fed.Cir.1998). The burden is on the patentee to demonstrate the claim amendment or argument was not offered to avoid prior art, as such an amendment prevents the recapture of subject matter the applicant surrendered to obtain patent protection. *See id; Warner–Jenkinson*, 117 S.Ct. at 1051. If this burden is not met by the patentee, prosecution history estoppel bars application of the doctrine of equivalents as to that element. *See Litton Systems*, 140 F.3d at 1456. However, "[w]here the reason for the [claim] change was not related to avoiding the prior art ... [the prosecution history] does not necessarily preclude infringement by equivalents ...." *See id.* It is thus important for the Court to determine the reason a patentee submitted an argument or amendment during the prosecution of the patent. *See Warner–Jenkinson*, 117 S.Ct. at 1051.

■ Briefly, one other facet of the law must be examined in conjunction with the doctrine of equivalents. This inquiry addresses whether a patent is a "pioneer patent." A pioneer invention is defined as "one of such novelty and importance as to mark a distinct step in progress of the art, as distinguished from the mere improvement or perfection of what had gone before." *See Boyden Power–Brake Co. v. Westinghouse*, 170 U.S. 537, 562, 18 S.Ct. 707, 42 L.Ed. 1136 (1898). The importance of this determination is that a pioneer patent is entitled to a broad range of equivalents. *See Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed.Cir.1987). The extent to which an invention is a pioneer inven-

tion is a question of fact. *See Martin v. Barber*, 755 F.2d 1564, 1568 (Fed.Cir.1985).[11]

The Court commences its doctrine of equivalents analysis with Claim 9 of the '959 Patent, as it presents substantial issues of prosecution history estoppel not present in the other claims. Thereafter, Claims 1, 7 and 11 will be considered under the doctrine of equivalents.

### a. Doctrine of Equivalents: Claim 9

 The primary issue as concerns this claim is whether prosecution history estoppel bars StairMaster from arguing the "less than 90 degrees" claim can include angles slightly above 90 degrees. Procycle contends Stair-Master surrendered any expansion of Claim 9 under the doctrine of equivalents. Specifically, Procycle points to the attorney's remarks accompanying an amendment to add a new claim 15 during the reissue, which after further amendment through claim 21, subsequently became claim 9:

> Claim 15 is patentable over the cited references because the cited references fail to disclose a device in which the angle between the pedal arm and the elongated flexible member (which connects the pedal to the drive system assembly) is less than 90°. Exhibit H provides a comparison between Fig. 5 of the present invention and Fig. 3 of the Kay reference showing that whereas the present invention provides an angle α less than 90°, the Kay reference discloses an angle β greater than 90° when the pedal is in the upper-most position.

D.I. 108, Ex. AQ at 372. StairMaster, on the other hand, disagrees and argues that prosecution history estoppel does not limit it to the literal language of the claim, even when the amendment in question was made to overcome prior art. For support for this proposition, StairMaster cites *Litton Systems:* "Where a change is made to overcome an objection based on the prior art, a court should explore the reason (right or wrong) for the objection and the manner in which the amendment addressed and avoided the objection." *See Litton Systems*, 140 F.3d at 1457. Based on this and similar language, StairMaster argues it should not be estopped from an angle slightly greater than 90 degrees because nothing in the prosecution history requires literally reading the claim language and the Kay prior art has a very different overall structure from the '959 patented invention.

The Court disagrees with StairMaster's view of the law of prosecution history estoppel. StairMaster is correct that the scope of prosecution history estoppel, as a basic proposition, is determined by "whether one of ordinary skill in the art would objectively conclude from the prosecution history that an applicant surrendered it." *See id.* at 1462. However, the *Litton* Court also made clear that, "when an applicant narrows a claim element in the face of an examiner's rejection based on the prior art, the doctrine estops the applicant from later asserting that the claim covers, through the doctrine of equivalents, features that the applicant amended his claim to avoid." *See id.* Here, StairMaster concedes the "less than 90 degrees" limitation was added to the patent in response to a prior art rejection based on United States Patent No. 3,704,886 issued to Kay. The Kay patent contained a similar angle which was greater than 90 degrees when the pedal was in the upper-most position. Because Stair-Master amended its claim to avoid the greater than 90 degree angle, it is estopped from arguing that the current limitation in the claim may include an angle greater than 90 degrees. The Court also notes there is no requirement that there be a statement in the prosecution history to the effect that a limitation in a claim must be literally read. To read a claim literally is the rule, not the exception. Nor has there been found any case law that supports the requirement that

---

11. StairMaster also broaches the issue of "copying." Copying refers to an attempt to copy the general invention or idea, as opposed to a specific structure. *See Hilton Davis Chem. Co. v. Warner–Jenkinson*, 62 F.3d 1512, 1519 (Fed.Cir. 1995), *rev'd on other grounds*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). However, more recently in *Warner–Jenkinson*, the Supreme Court has held that the "better view" is that "intent plays no role in the application of the doctrine of equivalents." *See Warner–Jenkinson*, 117 S.Ct. at 1052. As the Supreme Court has specifically referred to "copying" as an intent-based doctrine, the Court declines to consider it in a doctrine of equivalents analysis. *See id.*

the overall structure of a prior art invention be similar to the structure of the patented invention, as StairMaster attempts to argue.

The summary judgment record suffices to exclude greater than 90 degree angles from the range of equivalents covered by the "less than 90 degrees" claim language in Claim 9 of the '959 Patent. Because StairMaster has not met its burden of demonstrating the argument at issue was not offered to avoid prior art, prosecution history estoppel bars application of the doctrine of equivalents as to the "less than 90 degree" claim language. As the Quantum steppers have angles that have been construed to be greater than 90 degrees, the Court finds that neither of these accused devices infringe Claim 9 of the '959 Patent under the doctrine of equivalents. Summary judgment is therefore granted to Procycle on noninfringement of Claim 9 under the doctrine of equivalents.

### b. Doctrine of Equivalents: Claims 1, 7, and 11

Procycle also moves this Court for summary judgment on grounds of noninfringement of Claims 1, 7, and 11 of the '959 Patent under a theory of infringement by equivalency. To reiterate, the doctrine of equivalents is applied to each individual element of a claim, not to the invention as a whole. *See Warner–Jenkinson*, 117 S.Ct. at 1049. As rehearsed previously, it is for the trier of fact to apply the claim as construed to determine whether the accused device, element by element, is equivalent to that which has been patented. *See Multiform Desiccants*, 133 F.3d at 1480. However, the Supreme Court has made clear that, "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *See Warner–Jenkinson*, 117 S.Ct. at 1053 n. 8. The Court will apply the "means/way/function" test to the limitations in dispute in Claims 1, 7 and 11 to determine where there exists a genuine issue of material fact concerning whether two elements are equivalent.

As every claim term within a claim must be met under the doctrine of equivalents, the absence of a genuine issue of material fact as to one claim term in a claim makes it unnec-

essary to consider the other claim terms in contention. *See Chiuminatta*, 145 F.3d 1303, 1998 WL 239335 at *8 ("[Federal Circuit] case law clearly provides that equivalence under the doctrine of equivalents requires that each claim limitation be met by an equivalent element in the accused device."). With this thought in mind, the Court turns back to its analysis of the various forms of "engage." As seen above, StairMaster's primary contention as concerns this claim language is that interactions on the molecular level are like any other type of mechanical engagement, whether they be direct or indirect. The Court has thoroughly rejected this position for reasons enunciated above in regard to infringement under a literal analysis. For similar reasons which follow, the Court finds the various forms of "engage" are not met by the accused devices under the doctrine of equivalents.

In Claims 1, 7 and 11, the transmission output of the speed increasing transmission must either use a continuous belt to engage, have "a means for engaging", or be "engaged with," a brake. The problem for StairMaster is that it seeks to construe the flywheel and its hub, which are made of a single piece of metal, as both the transmission output and the brake. In order to make its argument sensical at any level, it has to argue that "engage with" includes interactions on the molecular level. Similarly, Claims 1, 7 and 11 require that the drive sprocket or drive means must either use a continuous chain to drivingly engage, have a "means for engaging", or be "engaged with," the transmission input of the speed increasing transmission. Assuming StairMaster is correct that the large drive pulley of the accused devices is both part of the drive means and the input of the speed increasing transmission, these same molecular interactions must account for the engagement between the drive means and the transmission input.

The Court finds that such far-fetched interpretations on StairMaster's part strain all credulity. As a practical matter, such molecular interactions are not engagements. Engagement connote the coming together of two separate elements (which heretofore had completely separate molecules) by the

use of some indirect mechanical engagement such as a belt and pulley or a direct mechanical engagement such as a weld or key and keyway. If StairMaster's interpretation of "engage" were taken seriously, nearly any component of an accused device could be considered engaged whether the component in question was made of one piece or a hundred pieces. Such a result would be absurd.[12]

The Court therefore finds that under a doctrine of equivalents analysis, no reasonable jury could disagree that such molecular interactions do not perform substantially the same function in the same way to achieve substantially the same result as the direct and indirect mechanical engagements alluded to in the '959 Patent. Because these engagement claim terms exist throughout Claims 1, 7, and 11, and because in order to find infringement by equivalency all claim terms in a claim must be found to be met by equivalency, the Court perforce must conclude that neither the Executive or Quantum steppers infringe the '959 Patent under the doctrine of equivalence. Procycle's summary judgment motion on noninfringement of Claim 1, 7, and 11 of the '959 Patent under a theory of infringement by equivalency will be granted.

## C. INVALIDITY

### 1. REISSUE REQUIREMENTS UNDER 35 U.S.C. § 251

■ Procycle contends the PTO erred in accepting StairMaster's reissue declarations under 35 U.S.C. § 251 and its accompanying regulation, 37 C.F.R. § 1.175 and therefore, the '959 Patent is invalid.[13] Under 35 U.S.C. § 251:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue . . . .

35 U.S.C. § 251. Claims 7 through 11 of the '959 Patent issued in such a manner. Whether the statutory requirements of 35 U.S.C. § 251 have been met is a question of law. *See Hester Industries, Inc. v. Stein, Inc.*, 142 F.3d 1472, 1479 (Fed.Cir.1998) (citing *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir.1997)). However, the legal conclusion is based on underlying findings of fact, which will be sustained unless they are clearly erroneous. *See Clement*, 131 F.3d at 1468; *In re Kemps*, 97 F.3d 1427, 1430 (Fed.Cir.1996) ("The law of this circuit is clear: PTO factual determinations are reviewed under the 'clearly erroneous' standard."). Additionally, the requirements of § 251 are supplemented by regulations which require an applicant to file an oath or declaration with an application for reissue. Under these regulations, the declaration must include, in relevant part:

(3) When it is claimed that such patent is inoperative or invalid "by reason of the patentee claiming more or less than he had the right to claim in the patent," distinctly specifying the excess or insufficiency in the claims.

. . . . . . .

(5) Particularly specifying the errors relied upon, and how they arose or occurred . . . .

---

12. Even assuming for the sake of argument that the '959 Patent was a pioneer patent, the increased scope of equivalents given to the '959 Patent thereby would not alter the Court's conclusion.

13. Although the Court has been unable to find any Federal Circuit case directly on point, previous cases *sub silentio* accorded standing to permit putative infringers to bring an invalidity

claim based on 35 U.S.C. § 251. *See Nupla Corp. v. IXL Manuf. Co., Inc.*, 114 F.3d 191 (Fed.Cir.1997) (affirming partial summary judgment based on § 251 invalidity grounds); *Hewlett–Packard Co. v. Bausch & Lomb Incorp.*, 882 F.2d 1556, 1566 (Fed.Cir.1989) (affirming in part summary judgment based on § 251 invalidity grounds).

37 C.F.R. § 1.175(a) (1995).[14] Although factual determinations by the PTO are reviewed by the PTO under the clearly erroneous standard, there appear to be no facts in issue as to the sufficiency of the declarations made by Potts. The prosecution history is now a completed record and all that is required is an application of the law to those facts. As a legal question, the Court reviews this question *de novo. See Scripps Clinic & Research Foundation v. Genentech, Inc.,* 927 F.2d 1565, 1574 (Fed.Cir.1991). Lastly, in considering both the statutory and regulatory requirements, a patent is presumed valid and such validity may only be overcome by clear and convincing evidence. *See* 35 U.S.C. § 282; *Nupla,* 114 F.3d at 192–93.

Section 251 of the patent statutes was promulgated by Congress to provide a statutory basis for correction of "error." "Error," in this context, means "accident, inadvertence, or mistake." *See Hewlett–Packard,* 882 F.2d at 1565. Insight resulting from hindsight on the part of new counsel does not, in every case, establish error. *See id.* If a reissue application was not made to correct a legally cognizable "error," reissue should not have been properly allowed and those reissue claims would be invalid for failing to conform to 35 U.S.C. § 251 and the regulations promulgated thereunder.[15] *See Nupla,* 114 F.3d at 195. Further, the reissue procedure is only available to correct error in claims in patents as originally issued and cannot be used to correct just any mistake made during prosecution. *See id.; In re Weiler,* 790 F.2d 1576, 1582 (Fed.Cir.1986) ("The reissue statute was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentees of a second opportunity to prosecute *de novo* his original application."). The statute is remedial in nature, however, as it is based on fundamental principles of equity and fairness and therefore, should be construed liberally. *See Weiler,* 790 F.2d at 1579.

Specifically, Procycle makes three arguments concerning the reissue process: 1) having filed a Petition to Make Special during the original prosecution of the '338 Patent, it was improper for StairMaster to seek to broaden the scope of the '338 Patent by means of an application for reissue; 2) there is no evidence that supports the allegation that an error correctable under the reissue statute occurred during the prosecution of the '338 Patent; and 3) there are material differences between Reissue Claims 9, 10 and 11 of the '959 Patent and the original claims which are not properly explained in the reissue declarations. StairMaster responds there is no authority for Procycle's proposition that use of the special procedures for prosecution of the original patent renders ineligible a patentee from using the reissue procedures outlined in the patent statute. StairMaster also contends that where there are unnecessary limitations added to the original claims and a reissue application has been successfully prosecuted, it is self-evident that the initial patent attorney erred and there was no need for the original patent attorney to explain his errors in a reissue declaration. Additionally, StairMaster maintains Procycle has cited no authority that the PTO is precluded from implicitly waiving any

---

**14.** These regulations were subsequently amended on October 10, 1997. The amended regulations promulgated new requirements. StairMaster argues that these new regulations, effective December 1, 1997, should apply to the facts of this case, even though this reissue patent issued on May 30, 1995, and all declarations concerning the reissue were made previous to that time. To support its contention, StairMaster asserts the new regulation does not indicate whether it should apply only to applications filed after the date the regulation became effective.

Although the Court can appreciate StairMaster desiring these more favorable regulations be applied to the facts of this case, there is simply no authority to do so. It is counter to all legal dictates concerning the retroactivity of regulations, that the Court should apply regulations, relating to the reissue process, that became effective two and half years after this reissue patent issued. The Court therefore declines to apply these newly enacted regulations to the facts of this case.

**15.** StairMaster disputes whether the regulations can be relied upon as a basis for invalidating the patent. However, Federal Circuit case law makes clear that not meeting the requirements of the regulations can be a basis for finding the reissue claims of a patent invalid. *See Nupla,* 114 F.3d at 195 (reissue claims deemed invalid because supplementary declaration filed during reissue process was insufficient); *Hewlett–Packard,* 882 F.2d at 1566.

perceived deficiencies in the supplemental declarations to the reissue application under 37 C.F.R. § 1.183.[16] Lastly, StairMaster argues that certain minor changes between the original patent and the reissue application did not need to be addressed by StairMaster in their declarations because the changes in language did not effect the scope of the claim.[17]

■ First, the Court agrees with Stair-Master that there is no authority for the proposition that having filed a Petition to Make Special in order to take advantage of the expedited prosecution process offered by the PTO, StairMaster should now be ineligible somehow for reissuance under § 251. Procycle repeatedly argues that StairMaster made a deliberate, strategic choice in utilizing the special, expedited prosecution procedures, but it does not sufficiently explain why such a deliberate, strategic choice precludes the finding by the PTO that StairMaster claimed less than it had a right to claim during the original prosecution process. Not only does Procycle cite no authority for its proposition of law, but such a proposition is contrary to common sense. One can easily foresee a patentee wanting to take advantage of the special expedited procedures allowed for under the patent regulations in order to acquire patent rights which would protect its investment in capital and facilities, while at the same time mistakenly believing during this expedited process that it rightfully claimed all that it could. Following the expedited procedures utilized by StairMaster is therefore not inconsistent with timely filing for reissuance of a patent, and no court has ever so held. Thus, Procycle's motion for summary judgment on invalidity on this basis is denied.

■ Second, the applicant for the reissue patent appears to have explicitly set forth the error that occurred and how it arose. Potts, in connection with his supplemental declaration that accompanied his application for reissue stated:

10. These errors arose or occurred because:

(a) This was my second patent and, being inexperienced with patents and, in particular patent claims, I misunderstood the purpose and requirements of patent claims, and thought that by including specific information about a preferred device the claim was broadened, rather than narrowed.

(b) I misunderstood the proper form for claiming items in terms of the means for performing a function.

(c) I misunderstood the way in which a "whereby" clause is construed.

(d) My attorney at the time of the issuance of my patent, on whom I relied, did not fully understand or appreciate the true scope of my invention.

*See* D.I. 107, Ex. M at A125. Although it is clear from Potts' declaration why Potts might have committed the error, because insight resulting from hindsight on the part of new counsel does not always establish a legally cognizable error, *see Hewlett–Packard*, 882 F.2d at 1565, the issue boils down to whether this statement by Potts concerning his attorney's error meets the requirement set out in 35 U.S.C. § 251 and 37 C.F.R. § 1.175(a)(5).

An attorney's failure to appreciate the full scope of the invention is "one of the most common sources of defects in a patent," and

---

16. 37 C.F.R. § 1.183 in pertinent part states:
In an extraordinary situation, where justice requires, any requirement of the regulations in this part which is not a requirement of the statute may be suspended or waived by the Commissioner or the Commissioner's designee, *sua sponte*, or upon petition of the interested party, subject to such other requirements as may be imposed.

17. In addition, there is some disagreement over whether the supplemental declarations submitted by Peterson were allowable under the PTO regulations, as StairMaster never filed a petition to

specifically allow Peterson to file such a declaration. Under 37 C.F.R. § 1.183, the PTO may, as long as it does not violate the statutory mandate, waive its regulations. Specifically, the PTO expressly relied upon § 1.183 to allow StairMaster's officers to file declarations after the inventor, Potts, died. *See* D.I. 107, Ex. T at A170. As Procycle has submitted no authority to the contrary disallowing the PTO to waive its own regulations, the Court finds that Peterson and other StairMaster officers were properly permitted to file supplemental declarations in aid of their then-pending reissue application.

the allegation of such an error usually is sufficient to satisfy the error requirement under § 251. *See In re Wilder,* 736 F.2d 1516, 1519 (Fed.Cir.1984). In fact, like the case in *Wilder,* the attorney's error was discovered after commercialization of the invention and the issuance of the patent and the application for broader claims was filed timely within two years after the original patent issued. *See id.* Thus, as in *Wilder,* under these circumstances, the Court finds the Pott's explanation of error, in both his and his attorney misunderstanding the scope of the invention, sufficient to satisfy the error requirement under 35 U.S.C. § 251.[18]

■ Additionally, however, under 37 C.F.R. § 1.175(a) an oath or declaration is required with respect to the error alleged under § 251. *See id.* Specifically, § 1.175(a)(5) requires an explanation of the "errors relied upon, and how they arose or occurred." *Id.* For instance, in *Wilder,* the attorney had to declare his error by stating no prior art search was done and he assumed limitations were required by prior art without justification. *See id.* at 1520. Similarly, in *Amos,* the patentees explained in a declaration how oversight by the attorney who initially prosecuted the patent led them not to claim their invention as broadly as they were entitled. *See In re Amos,* 953 F.2d 613, 615 (Fed.Cir.1991). In the present case, although Potts particularly specified the errors he made, it is not as clear whether Potts adequately specified how his initial attorney's errors in the original patent arose or occurred; in other words, why Attorney Dorman did not understand or appreciate the true scope of the invention. The Court cannot accept StairMaster's argument that the PTO implicitly waived this reissue declaration requirement under 37 C.F.R. § 1.183. If that were the case, summary judgment could never be granted on this issue. However, summary judgment has been granted on these grounds and affirmed by the Federal Circuit. *See Nupla,* 114 F.3d at 195.

Although there may be some question as to whether Potts made out a sufficient declaration, under § 282 of the patent statute, there is a presumption of validity accorded issued patents. *See* 35 U.S.C. § 282. Thus, Procycle must prove its case on this ground by clear and convincing evidence to rebut that presumption. *See Nupla,* 114 F.3d at 192–93. The Court finds as a matter of law that Procycle has not satisfied this heavy burden that Pott's statement concerning his attorney's errors did not meet the requirement under § 1.175(a)(5). Summary judgment on invalidity on this basis will therefore be denied.

■ Third, under 37 C.F.R. § 1.175(a)(3), Procycle has argued that StairMaster has not met this requirement because StairMaster did not properly "specify every difference between the original and reissue claims." *See Nupla,* 114 F.3d at 193, 195; *see also In re Constant,* 827 F.2d 728, 729 (Fed.Cir.1987) (reissue declarations must "specify every difference between the original and reissue claims."). Specifically, Procycle points to the fact in Claim 9 of the '959 Patent that StairMaster has deleted the limitation requiring the exercise apparatus to have a "base." Procycle also points to the fact that Claim 11 lacks a "means for engaging the transmission input" and the language "dissipating the work of the user in the form of heat" was added to Claim 11 without explanation in the declaration accompanying the reissue application.

Preliminarily, with respect to the term "means for engaging the transmission input," the removal of that limitation is specifically addressed in the declarations. *See* D.I. 108, Ex. AZ at A445. ("New independent claim 23 simply recites that the transmission input is engaged with the drive means without reciting a "means for engaging" as a separate element."). As regards the other two limitations not mentioned in the claim language, the *Nupla* Court emphasized that it was not

---

**18.** *Wilder* dealt with an attorney's explanation of his error, while this case does not. However, it does not matter that the initial attorney, Dorman, did not make the declaration setting forth the errors in the initial prosecution of the patent, as a patentee or an applicant can make the requisite declaration. *See In re Amos,* 953 F.2d 613, 615 (Fed.Cir.1991) (Board of Patent Appeals and Interferences finding declarations by patentees that attorney committed error to meet the requirements under 37 C.F.R. § 1.175(a)(5)).

concerned with, nor was it making any ruling on, "case[s] in which only small language changes ... were suggested by the applicant." *See id.* at 196.[19] Indeed, as small language changes do not affect the scope of the claim and thus, do not constitute new matter under 35 U.S.C. § 132, the Court finds that such changes are not "differences" which need to be specified under 37 C.F.R. § 1.175(a)(3). As applied to the language changes in the case at bar, the frame of every stepper must have a "base," and all brakes relevant to this type of apparatus must dissipate the work of the user in the form of heat; in other words, these additions to, and subtractions from, the original patent were inherent characteristics of the invention. Although *Nupla* specifically states it makes no comment, ruling, or intimation on the need for supplemental declarations explaining such small language changes, *see id.*, the Court can find no case where 37 C.F.R. § 1.175(a)(3) was found to be violated by not documenting such inconsequential changes from the original patent. Procycle has not met its substantial burden of proving its case on this ground by clear and convincing evidence to rebut the presumption of validity of the '959 Patent. *See* 35 U.S.C. § 282; *Nupla*, 114 F.3d at 192–93. It follows that summary judgment on invalidity on this basis must also be denied.

### D. CONCLUSION

In sum, StairMaster's motion for partial summary judgment on infringement of Claims 9 under a theory of literal infringement is denied. Procycle's motion for summary judgment on noninfringement of Claim 9 of the '959 Patent is granted as to both theories of literal infringement and doctrine of equivalents. Similarly, summary judgment on noninfringement of Claims 1, 7, and 11 of the '959 Patent is granted under both a theory of literal infringement and doctrine of

equivalents. Lastly, Procycle's motion for summary judgment on invalidity is denied.

An appropriate order will issue.

### OPINION ON MOTION FOR REARGUMENT

### I. Procedural Background

StairMaster Sports/Medical Products ("StairMaster"), brought a patent infringement suit against Group Procycle, Inc. and Procycle USA, Inc. (collectively "Procycle"), alleging infringement of U.S. Patent No. Re. 34,959 ("the '959 Patent") entitled Stair Climbing Exercise Apparatus. The Court held a claim construction hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), to construe the meaning of disputed claim language. That hearing subsequently resulted in an opinion, *see StairMaster Sports/Medical Products v. Group Procycle, Inc.*, 1998 WL 290296 (D.Del. May 20, 1998). The *Markman* opinion generated a motion for reargument by StairMaster and, without benefit of a motion, a request from Procycle that the Court modify its construction of one of the claim terms not important here. StairMaster's motion for reargument and Procycle's request were denied on July 14, 1998.

In the interim, StairMaster moved for partial summary judgment on infringement of Claim 9 of the '959 Patent under a theory of literal infringement and Procycle moved for summary judgment urging noninfringement of Claims 1, 7, 9 and 11 and invalidity of the '959 Patent based on violations of the patent reissue statute, 35 U.S.C. § 251. The matter was argued on May 28, 1998, and an Opinion and Order issued on July 29, 1998. That opinion denied StairMaster's motion for partial summary judgment and granted Procycle's judgment as to its noninfringement on Claims 1, 7, 9 and 11 under both literal infringement and the doctrine of equivalents.

---

19. There was also some dispute between the parties as to whether the Court must consult the Manual of Patent Examining Procedure ("MPEP") in coming to a decision on this summary judgment motion. In *In re Constant*, the Federal Circuit Court of Appeals made clear that, "this case is published solely for the purpose of interpreting [37 C.F.R. 1.175]. No implication is to be drawn that the MPEP is binding on this Court." *See In re Constant*, 827 F.2d at 729 n. 2; *Nupla*, 114 F.3d at 193; *Litton Systems Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1439 (Fed.Cir. 1984).

That portion of Procycle's motion for summary judgment based upon validity was denied. On August 12, 1998, StairMaster filed a motion for reargument of the summary judgment ruling pursuant to Local Rules of Civil Practice for the District of Delaware, Rule 7.1.5 ("Local Rule").

## II. The Applicable Legal Standard

■ Through precedent, the District of Delaware has developed principles that apply to motions for reargument under Local Rule 7.1.5. First and foremost is that motions for reargument should be granted sparingly. It follows reargument should never be granted if reargument would not alter the previous result reached by the Court. "[This] procedural mechanism afforded by Local Rule 7.1.4[sic] should not be abused to allow a never ending polemic between litigants and the Court." *Oglesby v. Penn Mutual Life Insurance Company*, 877 F.Supp. 872, 892 (D.Del.1995), *aff'd*, 127 F.3d 1096 (3d Cir. 1997); *Pirelli Cable Corporation v. Ciena*, 988 F.Supp. 424 (D.Del.1998). It is for this reason that Local Rule 7.1.5 quoted in the margin [1] permits filing of only one brief per side with an emphasis on brevity. Further, a motion for reargument may not be used to supplement or enlarge the record provided to the Court on which it made its merits decision. Moreover, there are only three circumstances when reargument may be allowed: 1) "where the Court has patently misunderstood a party," 2) "[where the Court] has made a decision outside the adversarial issues presented to the Court by the parties," or 3) "[where the Court] has made an error not of reasoning but of apprehension." *See Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1241 (D.Del.1990). Finally, in deciding a motion for reargument, the Court should balance the interest and finality of judicial decisions with the recognition that courts sometimes err. *Oglesby*, 877 F.Supp. at 892. Application of these legal principles compels

denial of StairMaster's motion for reargument.

## III. Discussion—The Applicable Legal Standard Applied to StairMaster's Requested Relief

Motivating the request for reargument is StairMaster's desire that the Court delete from its July 29, 1998, Opinion 1) all discussion leading up to and concluding that a judicial estoppel occurred (last half of text on typescript p. 11 through the top two-thirds of p. 14, including deletion of footnote 5 and the last sentence of footnote 6) and 2) certain language dealing with StairMaster's claim construction charts (language beginning with the third sentence of the first full paragraph to the last sentence found on p. 17 of the typescript). Both litigants have failed in one way or another to apprehend the purpose of a motion for reargument or follow Local Rule 7.1.5. First, StairMaster, apparently anxious to get the last word, filed a reply brief while Local Rule 7.1.5 distinctly sets out that "the Court will determine from the motion and answer whether argument will be granted."

Second, while the parties followed Local Rule 7.1.5 by keeping the briefs relatively short, they filed no less than four "declarations" containing a minimum of 16 exhibits, the majority of which were not part of the summary judgment record. A motion for reargument cannot be used as a vehicle to supplement the record put before the Court prior to its decision on summary judgment. If the rule were otherwise, finality of summary judgment rulings would be nothing more than a never to be attained fond dream. It follows that even if the Court were to reach the merits of the reargument motion, it could not consider the majority of exhibits tendered by the parties.

■ Third and most importantly, there is a fatal weakness in StairMaster's motion for reargument. StairMaster readily concedes that if the relief were granted, it would "not

---

1. Rule 7.1.5 states:
 A motion for reargument shall be served and filed within 10 days after the filing of the Court's opinion or decision. The motion *shall briefly and distinctly* state the grounds therefor. Within 10 days after service of such motion, the oppos-

 ing party may serve and file a *brief* answer to each ground asserted in the motion. The Court will determine from the motion and answer whether argument will be granted.
 D. Del. LR 7.1.5 (1995). (emphasis added).

effect the noninfringement decisions reached by the Court," Docket Item ("Dkt.") 176, p. 1, i.e., StairMaster does not seek to alter or amend the summary judgment order. Rather, it challenges "the basis for the Court's findings with respect to infringement of Claim 9." *Id.* Thus, StairMaster concedes its quarrel is with the reasoning of the Court in reaching the result. The fact that a litigant is unhappy with one or more reasons for a holding or, for that matter, language contained within an opinion, does not warrant reargument. Finality of judicial decisions must trump a litigant's displeasure with some of the bases on which that decision was reached. Dissatisfaction with the Court's rationale in reaching a result cannot serve as a springboard for obtaining reargument. It is for this reason if a party does not seek to alter the result reached by the Court, grant of reargument is improper.

Without reaching the merits, an order will issue denying reargument.